## HEYWOOD v. DOHERTY et al.

### (Supreme Court, Appellate Term. May 18, 1911.)

1. NEW TRIAL (§ 32*)—IMPROPER REMARKS OF COUNSEL—OBJECTIONS.

One may not have a new trial for improper remarks of his opponent's counsel, not having asked for a mistrial before going to the jury, but having merely asked that the remarks be stricken from the record, and the court having not only so directed, but charged the jury to disregard them.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 47; Dec. Dig. § 32.*]

2. APPEAL AND ERROR (§ 1006*)—REVIEW—WEIGHT AND SUFFICIENCY OF EVIDENCE.

Considering the question of probability of the agreement testified to by plaintiff, and notwithstanding the jury considered her mistaken in certain items, and that she testified to a special agreement for compensation for overtime work, not mentioned on a prior trial, held, the evidence in an action based on an agreement of defendants to make certain allowances to plaintiff if she would go to a certain place and work for them, and on an agreement to pay her for overtime work, was sufficient to sustain the verdict for her, especially where it was the second trial in which she had succeeded.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1006.*]

3. MASTER AND SERVANT (§ 72*)—OVERTIME WORK UNDER SPECIAL AGREEMENT—RECEIPTS FOR SALARY.

Compensation for overtime work under a special agreement therefor is not salary, so that right to recover it is not affected by the employé having given receipts for salary for the month in which such work was rendered.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 72.*]

Seabury, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Myrtle C. Heywood against Henry L. Doherty and another. From a judgment for plaintiff on a verdict, and from an order denying a motion for new trial, defendants appeal. Affirmed.

See, also, 121 N. Y. Supp. 610.

Argued before SEABURY, GUY, and BIJUR, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William Hepburn Russell and Frank E. Carstarphen (N. Raymond Heater, of counsel), for appellants.

Van Sinderen Lindsley, for respondent.

BIJUR, J. The two questions presented on this appeal are the weight of evidence (that is, the credibility of Mrs. Heywood), and, second, the action of plaintiff's counsel in referring to Mr. Doherty's having been in jail.

[1] Taking up the latter first, I know of no case in which a verdict has been reversed because of the improper remarks of counsel, unless some request of the opponent in reference to such remarks has been refused by the court and due exception taken. As to the cases cited by Mr. Justice SEABURY, namely, Freedman v. Press Pub. Co., 64 Misc. Rep. 85, 117 N. Y. Supp. 946, Walter v. Joline, 136 App. Div. 426, 120 N. Y. Supp. 1025, and Rothschild v. Weingreen, 121 N. Y. Supp. 234, in the first two, motions for a mistrial were expressly denied, and in the last the improper questions were expressly objected to as incompetent, irrelevant, and immaterial, and the overruling of the objection excepted to.

In the case at bar, defendant's counsel asked that the obnoxious remarks be stricken from the record, and the court so directed. In its charge, also the jury was instructed to disregard this statement. While I agree with Mr. Justice SEABURY'S characterization of the conduct of plaintiff's counsel, his opponent cannot be allowed to go to the jury without asking for a mistrial, in the hope that the verdict will be in his favor, and yet claim the right to a new trial if the verdict is against him.

[2] As to the credibility of Mrs. Heywood, I do not regard her story as to the conversation with Mr. Frueauff in Denver as inherently improbable, nor can it be said that the jury doubted her word merely because they believed that she was mistaken as to the promise to pay her doctor's bill, $140, and her medicine bill, $10. They evidently believed that the balance of the $385, namely, $235, was promised to her.

As to the second cause of action, namely, excess salary, February 1 to October 1, 1906, $175, the jury believed that the promise had been made to her in Denver to pay her $20 a week.

As to that part of the third cause of action which covered excess salary, October 1, 1906, to August 1, 1907, $773, the jury no doubt thought that she was mistaken. There are elements in the testimony which render a distinction between the claims for the two items quite possible. From October 1, 1906, Mrs. Heywood was herself in the "cage" as cashier, and she herself drew the receipt which she signed. Moreover, during that period, namely, on January 16, 1907, she receipted for a "salary bonus for the year 1906" of $22.66.

While these distinctions may not appeal to us, they nevertheless suggest some basis for the jury's determination; and, even though we may feel that we might not have come to the same conclusion, it cannot be said that the jury had no basis for finding as it did in respect of the excess salary for the two periods named.

[3] The balance of the third cause of action, namely, $593.40, consisting of $515.15 for overtime work and $78.20 for meals, I think the

jury was justified in believing the defendant was entitled to recover. This was not salary, and was not affected by her receipt, but was for services rendered upon an express or special promise. While, of course, the testimony as to this promise is open to the suggestion pointed out by Mr. Justice SEABURY, still that consideration, also, was one for the jury. Counsel was free to cross-examine the witness as to her failure to testify to this special promise on the first trial. He did make reference to the testimony on the first trial in regard to other matters, and the cross-examination as to the extra services was severe and extensive.

The charge of the judge was eminently fair, and no exception was taken to it. In view of all these circumstances, and the fact that this is the second trial in which the plaintiff has succeeded, I think that the judgment should be affirmed, with costs.

Judgment affirmed, with costs.

GUY, J., concurs.

SEABURY, J. (dissenting). The plaintiff sued to recover $1,926.-75, and has recovered judgment for $1,003.40. This judgment was rendered upon the second trial. Upon the first trial she recovered $700, and that judgment was reversed by this court.

The plaintiff's claim is based upon three alleged causes of action. The defendants are in business as brokers and promoters. In the first cause of action set out in the complaint it is alleged that in December, 1905, in the city of Denver, the defendants employed the plaintiff to come to New York and perform the duties of filing clerk in their office; that "in consideration of the plaintiff's removal from her home, and from the healthful surroundings of the said city of Denver," the defendants agreed to pay "any and all expenses, and to make any expenditure of money necessary to her health and comfort during her departure and transportation, and that the defendants would pay back and reimburse the plaintiff for the same"; that pursuant to this agreement the plaintiff expended $385. In the second alleged cause of action the plaintiff alleges that the defendants agreed to pay her $20 a week after February 1, 1906, while plaintiff was employed by defendants in their New York office, "and also such additional increase in salary as her work merited"; that from February 1, 1906, to October 1, 1906, plaintiff did perform services as assistant and filing clerk in the defendants' office, for which services she claimed $700, of which she alleges only $525 have been paid, leaving a balance of $175 claimed to be due her. For a third alleged cause of action she claims that, in consideration of her removal from Denver and her promotion to the position of cashier, "the defendants led this plaintiff to believe" that she would receive as compensation for her services the salary which had been paid to the former incumbent of this position, to wit, $150 per month; that the plaintiff performed the services of accountant and cashier from October 1, 1906, to August 1, 1907, and that the reasonable and agreed compensation for such services for said time was $1,500, no part of which has been paid, except the sum of $727, leaving a balance claimed to be due of $773; that the plaintiff also per-

formed extra work of the reasonable and agreed value of $515.15, and that the expenses and outlays incidental thereto amounted to $78.25.

Under the first cause of action alleged, the plaintiff has recovered judgment for $65 which she claims she expended for "extra clothing," $75 for "crating her household furniture," $15 for "carting," $25 advanced for rent, $30 which she claims she lost upon the sale of certain coal she had purchased in Denver, and $25 for incidental expenses which she claimed she incurred on her trip to New York over and above the sum of $70, which the defendants concededly paid her for this purpose. One of the defendants testified that the plaintiff made no claim for any of these items prior to the time when her attorney made the claim preparatory to the commencement of this action. Andrews, an employé of the defendants, to whom the plaintiff testified she had made the claim for these items, testified that no such claim was made. The services which the plaintiff was employed to render were of a clerical nature, and it seems hardly probable that, in employing her to render these services, the defendants should have agreed to pay her for clothing, shoes, furs, hat, and gloves which she purchased. These articles would probably have been as necessary to the plaintiff in Denver as in New York, and the claim that there was a specific agreement on the part of the defendants to pay for them rests entirely upon the uncorroborated statement of the plaintiff.

While the jury did not allow the plaintiff to recover $140 which she claims she paid a physician for an operation which she had prior to December 1st, it is none the less significant, as showing the character of the plaintiff's claim, that she testified that the defendants agreed also to pay her this sum, although this debt was contracted before she alleges that she was employed by the defendants. Although the plaintiff claims that she expended $25 in addition to the sum the defendants paid her on her trip from Denver, she made no claim for this amount at the time. On the contrary, she claimed, as the receipt which she signed shows, only $10 in addition to the amount already paid her, and this sum was paid to her. There are many other incidents of the plaintiff's claim which impress us as being equally suspicious, but which we cannot stop to comment upon in detail.

The second alleged cause of action, upon which the jury allowed the plaintiff to recover $175, is based upon the difference between the salary which she claims the defendants agreed to pay her and the amount which she actually received. This claim extends from February 1, 1906, to October 1, 1906. This claim was allowed, although at the end of each week the defendant signed a receipt for the salary due at that time. All of these receipts, which were in the handwriting of the plaintiff were offered in evidence; but they seemed to have been deemed of no importance by the jury.

In her third alleged cause of action the plaintiff claims that she was promoted to the position of accountant and cashier, and that she performed the duties of this position from October 1, 1906, to August 1, 1907, and she claimed $773 as the difference between what she actually received and the sum which she claims the defendants agreed to pay her. This part of her claim the jury disallowed, although it was of

precisely the same character as the claim for $175 which they allowed her under her second alleged cause of action.

The jury did, however, allow her under her third alleged cause of action to recover $515.15 for "overtime" during which she claimed she worked. In referring to this item, this court, upon the former appeal, said:

"The plaintiff having received her salary at regular and stated periods, we think that the presumption is that the salary so received was in full payment for the services rendered. This presumption might, of course, be overcome by proof of a special agreement to pay additional compensation."

In the former trial there was no evidence of such "special agreement." In stating that a recovery could be had only in the event of a "special agreement," this court intended merely to state the rule of law, and not to suggest that upon a new trial the "facts" should be changed to meet the rule enunciated, and that the plaintiff should swear to the "special agreement" which she had omitted to testify to upon the first trial. This circumstance itself, it seems to me, tends very strongly to discredit the plaintiff's testimony, and is an example of what has been aptly termed "amended swearing."

A careful review of the whole case satisfies me that the plaintiff's claim is suspicious, and is contradicted by the documentary evidence in the case, and that the verdict which she has secured is contrary to the evidence. Reluctant as I am to set aside the verdict of a jury upon the ground that it is against the weight of the evidence, I am nevertheless conscious of the fact that to sustain this verdict would impose a greater strain upon credulity than it is able to sustain.

Only one other circumstance need be considered. During the examination of one of the witnesses the plaintiff's attorney volunteered the statement that he claimed that one of the defendants was in jail during part of the time that the plaintiff was in the defendants' employ. Upon objection being made to this statement, the court stated that it had "nothing to do with this case," and the defendants' counsel asked that it be "stricken out." The plaintiff's counsel then stated, "Your honor, it is a fact." Upon being asked again by the court, "What has that to do with this case?" the plaintiff's counsel replied, "They claim they are Sunday school teachers." That the remark of the counsel for the plaintiff was improper requires no argument to demonstrate. That it was intended to prejudice the jury against the defendants seems to us entirely probable. The courts have repeatedly censured the making of such improper remarks, and have had occasion to apply the rule that where such marks were made, and were of a prejudicial character, the judgment would be reversed.

It is argued that the same remarks were made upon the first trial; but I cannot see how this fact makes it less prejudicial or less open to criticism. The repetition of the offense aggravates its character, but does not excuse it. In a case of this character I think the remark was well calculated to prejudice the defendants. It is true that the defendants' attorney made no motion for the withdrawal of a juror; but this fact of itself does not prevent the court from visiting upon the plaintiff the natural consequences of misconduct resorted to on her be-

half, and by the aid of which she secured a verdict. Rothschild v. Weingreen, 121 N. Y. Supp. 234; Freedman v. Press Pub. Co., 64 Misc. Rep. 85, 117 N. Y. Supp. 946; Walter v. Joline, 136 App. Div. 426, 120 N. Y. Supp. 1025.

The judgment should be reversed, and a new trial ordered, with costs to appellants to abide the event.